## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

|   |   |   |
|---|---|---|
| | : | |
| ALTAGRACIA RODRIGUEZ | : | Hon. Faith S. Hochberg |
| E.D. A MINOR CHILD, | : | |
| | : | Civil Action No. 12-6726 |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| COMMISSIONER OF SOCIAL SECURITY, | : | |
| | : | Dated:  October 15, 2013 |
| Defendant. | : | |

_____:

**HOCHBERG, District Judge:**

### I.        PRELIMINARY STATEMENT

This matter comes before the Court upon Plaintiff's motion to review a final determination of the Commissioner of the Social Security Administration (the "Commissioner" or "Defendant") pursuant to Section 405(g) of the Social Security Act.  42 U.S.C. § 405(g).  The Court has reviewed the submissions of the parties and considers the motion pursuant to Federal Rule of Civil Procedure 78.

This appeal presents two issues:  (1) whether there is substantial evidence in the record to support the Commissioner's finding that Plaintiff's impairments do not meet or medically equal a listed impairment; and (2) whether there is substantial evidence in the record to support the Commissioner's finding that Plaintiff's impairments do not functionally equal a listed impairment.  For the reasons stated below, the Court affirms the Commissioner's findings.

## II.    STATEMENT OF THE CASE

On December 10, 2007, Altagracia Rodriguez ("Plaintiff"), the Claimant's mother, filed an application for child's SSI[1] benefits on behalf of her 13 year old son, E.D. ("Claimant"). The claim was denied both initially and upon reconsideration. Plaintiff requested a hearing before an administrative law judge to review the application, and on February 1, 2010, a hearing was held before ALJ Dennis O'Leary (the "ALJ"). On March 5, 2010, the ALJ decided that Claimant was not disabled because he did not suffer from a medically determinable impairment. Plaintiff requested review of the ALJ's March 5th decision, and on September 24, 2010, the Appeals Council vacated the ALJ's decision and remanded the case for a new hearing. The Appeals Council instructed the ALJ to evaluate the Claimant's impairments to determine whether they were severe individually or in combination and whether they functionally met a listed impairment.

On remand, the ALJ found that Claimant suffered from the following severe impairments: juvenile rheumatoid arthritis, adjustment disorder, depression, anxiety, ADHD, and obesity. However, the ALJ decided that Claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Additionally, the ALJ decided that Claimant does not have an impairment or combination of impairments that functionally equals the listings. Plaintiff requested a review of the ALJ's second decision, but on August 30, 2012, the Appeals Council found no grounds for review.

---

[1] Supplemental Security Income

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may review the Commissioner's factual findings only to determine whether they are supported by substantial evidence in the record.[2] This Court "retains a responsibility to scrutinize the entire record and to reverse or remand if the Secretary's decision is not supported by substantial evidence." *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981); *see also Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003). If the record reveals substantial evidence to support the ALJ's decision, then the decision must be affirmed, even if this Court would have decided the factual inquiry differently. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

## IV. DISCUSSION

### a. Standard for a Disabled Child's SSI Benefits

The Social Security Act, 42 U.S.C. § 1381, is "[f]or the purpose of establishing a national program to provide supplemental security income to individuals who have attained age 65 or are blind or disabled. . . ."[3] 42 U.S.C. § 1381. The Code of Federal Regulations sets forth a three-step sequential evaluation to determine whether a child is disabled. The three-step process requires Plaintiff to show: (1) that Claimant is not working at a substantially gainful level; (2)

---

[2] Substantial evidence is "more than a mere scintilla." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

[3] 42 U.S.C. § 1382c(a)(3)(C) provides:

> i.   An individual under the age of 18 shall be considered disabled for the purposes of this subchapter if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

> ii.  Notwithstanding clause (i), no individual under the age of 18 who engages in substantial gainful activity . . . may be considered to be disabled.

that Claimant suffers from a "severe" impairment or combination of impairments; and (3) that Claimant's impairment or combination of impairments meet, medically equal, or functionally equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 416.924.

Under step three, an "impairment is medically equivalent to a listed impairment . . . if it is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 416.926(a). A combination of impairments, where none individually meet one of the listed impairments, will collectively be compared to closely analogous listed impairments. If a combination of impairments is of equal medical significance to a listed impairment, then the impairments are medically equivalent to that listing. 20 C.F.R. § 416.926(b)(3).

Step three may also be met if there is functional equivalence for the impairment. The functional equivalence of a child's impairment or combination of impairments is evaluated under six domains. The six domains considered are: acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, caring for yourself, and health and physical well-being. 20 C.F.R. § 416.926a(b)(1). An impairment or combination of impairments functionally equals a listing if there is a finding of two "marked" limitations[4] or one "extreme" limitation[5] in any of the six domains. 20 C.F.R. § 416.926a(d).

---

[4] Claimant will be found to have a "marked" limitation in a domain when his impairment or combination of impairments "interferes seriously with [his] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2). "'Marked' limitation also means a limitation that is 'more than moderate' but 'less than extreme.'" *Id.*

[5] Claimant will be found to have an "extreme" limitation in a domain when his impairment or combination of impairments "interferes very seriously with [his] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3). "'Extreme' limitation also means a limitation that is 'more than marked.'" *Id.* A limitation rating of "extreme" is the worst rating a

Here, there is no dispute that Plaintiff meets steps one and two of the three-step process to determine whether a child is disabled. The ALJ found that Claimant has not engaged in substantial gainful activity since December 10, 2007 and that Claimant suffers from several severe impairments.[6] The only relevant disputed issue is the third step of the sequential analysis: whether Claimant's impairment or combination of impairments meet, medically equal, or functionally equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Step three is addressed in two parts below. First, the Court addresses whether substantial evidence supports the ALJ's finding that the Claimant's impairments do not meet or medically equal a listed impairment. Second, the Court addresses whether substantial evidence supports the ALJ's finding that the Claimant's impairments do not functionally equal a listed impairment.

### b. Whether Claimant's Impairments Meet or Medically Equal a Listed Impairment

Plaintiff argues that Claimant's impairments meet or medically equal a listed impairment and that substantial evidence does not support the ALJ's findings.[7] Plaintiff also argues that the ALJ neglected to combine and compare Claimant's severe impairments to the constellation of

---

domain can receive, but this "does not necessarily mean a total lack or loss of ability to function." *Id.*

[6] The ALJ found that Claimant suffers from juvenile rheumatoid arthritis, adjustment disorder, depression, anxiety, ADHD, and obesity.

[7] The Court notes that while Plaintiff complains of a lack of analysis in the ALJ's decision, the Court finds that there is sufficient analysis and substantial evidence to support the ALJ's decision. Moreover, the ALJ's decision is sufficient to permit "meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) ("Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis. Rather, the function of *Burnett* is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review.")

symptoms and diagnoses of various listings for medical equivalence.[8]  The Claimant's relevant
impairments and listings are addressed below.

### i. Inflammatory Arthritis Listing (114.09)

Plaintiff argues that the ALJ did not break down the inflammatory arthritis listing,
114.09, into its component parts in his decision.  Specifically, Plaintiff contends that the ALJ
failed to evaluate the criteria under subsection C, which requires involvement of other body
symptoms listed in 114.02(A) or (B).  Plaintiff claims that the ALJ fails to mention, "the C
criteria or Paragraph 114.02, or the 13 different body systems, any one of which establishes
disability under 114.09C."[9]  (Pl. Br. at 17.)  In response, Defendant argues that the ALJ did
incorporate all of the subsections, A-D, in his decision.  Defendant also argues that the ALJ
specifically found that there was no evidence of ankylosing spondylitis in this case.

The listing for inflammatory arthritis has four subsections, A-D.  Each subsection
describes a different way to satisfy the medical listing.[10]  20 C.F.R. Part 404, Subpart. P, App. 1,

---

[8] Plaintiff's argument is not supported by the record.  The ALJ specifically found that the
Claimant "did not have an impairment *or combination of impairments* that met or medically
equaled one of the Listed impairments at 20 C.F.R. Part 404, Subpart P, Appendix 1."  (*See*
Record at 26; *see also* Record at 18.)  Moreover, the ALJ went on to address each impairment,
thereby providing the analysis underlying his conclusions.

[9] Section 114.09(C) makes no reference to section 114.02(A) or (B), the listing for systemic
lupus erythematosus.

[10] Section 114.09 requires, "**(A)** Persistent inflammation or persistent deformity of: (1) One or
more major peripheral weight-bearing joints resulting in the inability to ambulate effectively (as
defined in 114.00C6); or (2) One or more major peripheral joints in each upper extremity
resulting in the inability to perform fine and gross movements effectively (as defined in
114.00C7). or **(B)** Inflammation or deformity in one or more major peripheral joints with: (1)
Involvement of two or more organs/body systems with one of the organs/body systems involved
to at least a moderate level of severity; and (2) At least two of the constitutional symptoms or
signs (severe fatigue, fever, malaise, or involuntary weight loss). or **(C)** Ankylosing spondylitis
or other spondyloarthropathies, with: (1) Ankylosis (fixation) of the dorsolumbar or cervical
spine as shown by appropriate medically acceptable imaging and measured on physical

Section 114.09.  Plaintiff must show that Claimant's impairments meet or medically equal one of the four subsections in the Inflammatory Arthritis Listing.  Plaintiff argues that the ALJ failed to address subsection C of Section 114.09 when making his determination.

Section 114.09(C)(2) specifically requires Plaintiff to show "[a]nkylosis (fixation) of the dorsolumbar or cervical spine as shown by appropriate medically acceptable imaging and measured on physical examination at 30° or more of flexion (but less than 45°) measured from the vertical position (zero degrees), and involvement of two or more organs/body systems with one of the organs/body systems involved to at least a moderate level of severity."  20 C.F.R. Part 404, Subpart. P, App. 1, Section 114.09(C)(2).  Plaintiff must show both an ankylosis of the dorsolumbar or cervical spine with the appropriate medical support and an involvement of two or more organs/body systems with one being at least a moderate level of severity.  Showing only the involvement of two more organs/body systems will not satisfy 114.09(C).  *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify. . . .  For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." (emphasis in original)).

---

examination at 45° or more of flexion from the vertical position (zero degrees); or (2) Ankylosis (fixation) of the dorsolumbar or cervical spine as shown by appropriate medically acceptable imaging and measured on physical examination at 30° or more of flexion (but less than 45°) measured from the vertical position (zero degrees), and involvement of two or more organs/body systems with one of the organs/body systems involved to at least a moderate level of severity. or **(D)** Any other manifestation(s) of inflammatory arthritis resulting in one of the following:  . . . (3) For children age 3 to attainment of age 18, at least two of the appropriate age-group criteria in paragraph B2 of 112.02."  20 C.F.R. Part 404, Subpart. P, App. 1, Section 114.09.

The Court notes that the ALJ did address each subsection of listing 114.09. The ALJ stated:

> the record does not document persistent inflammation or persistent deformity of one or more major peripheral weight bearing joints, resulting in the inability to ambulate effectively, as defined in section 114.00C6, Appendix 1, Subpart P, Regulations No. 4. There is no evidence of involvement of two or more organs/body systems, with one of the organs/body systems involved to at least a moderate degree of severity and severe fatigue, fever, malaise, or involuntary weight loss. There is no evidence of ankylosis and no evidence of any other manifestation of inflammatory arthritis resulting in at least 2 of the appropriate age group criteria in 112.02B2. Therefore, I find that the claimant does not meet or medically equal Listing 114.09.

(Record at 26.) The ALJ made clear in his findings that there is no evidence of ankylosis—a requirement of section 114.09(C). Plaintiff limited her argument to the involvement of the other thirteen different body systems. But involvement of other body systems alone will not meet the requirements in 114.09(C). Critically, Plaintiff points to no facts from the record that would rebut the ALJ's finding that there is no evidence documenting any of the four subsections in the listing. The Court finds that substantial evidence supports the ALJ's finding that the Claimant's impairments do not meet or medically equal the inflammatory arthritis listing (114.09).

### ii. Depression Disorder Listing (112.04) & Anxiety Disorder Listing (112.06)

Next, Plaintiff argues that the ALJ's findings, that the Claimant's adjustment and depression disorders do not meet 112.04 and that Claimant's anxiety disorder does not meet 112.06, are "devoid of concrete evidentiary support." In support of this position, Plaintiff makes three arguments: (1) the ALJ only used isolated sections of the mother's testimony to support his finding that the adjustment and depression disorders do not meet or medically equal 112.04 of the listed impairments; (2) the ALJ failed to mention Claimant's problem with psychogenic vomiting and failed to credit Claimant's separation anxiety issue; and (3) Claimant's problems

with psychogenic vomiting and separating from his mother amount to a "marked" limitation in age appropriate social functioning. Under these circumstances, Plaintiff argues that the ALJ's findings are not supported by substantial evidence because Claimant's anxiety disorder meets or medically equals 112.06 of the listed impairments.

In defense of the ALJ's findings, Defendant sets forth the following facts and findings from the record: (1) the ALJ found that Claimant was better with medication and provided evidence from the record that the anxiety disorder did not meet or medically equal 112.06; (2) the Claimant willingly separated from his mother during a psychiatric examination on August 22, 2007; (3) on February 4, 2010, Claimant's therapist indicated that Claimant had shown "significant progress over anxiety issues;" and (4) the ALJ considered the psychogenic vomiting problem resolved because a doctor stated the problem went away in a medical evaluation on November 3, 2010.

The listed impairment for anxiety disorders, 112.06 in Appendix 1 to Subpart P of Part 404, is met when the requirements in sections A and B are satisfied. Section A of 112.06 is met if there is, *inter alia*, a medically documented finding that "excessive anxiety manifested when the child is separated, or separation is threatened, from a parent." 20 C.F.R. Part 404, Subpart. P, App. 1, Section 112.06(A). Section B of 112.06 requires that the severity of the impairment meet at least two of the appropriate age-group criteria in paragraph B2 of 112.02. 20 C.F.R. Part 404, Subpart. P, App. 1, Section 112.06(B). The appropriate age-group criteria in Paragraph B2 of 112.02 include marked impairments in cognitive/communicative function, social functioning, personal functioning, and maintaining concentration, persistence, or pace. 20 C.F.R. Part 404, Subpart. P, App. 1, Section 112.02(B)(2).

The Court finds that the ALJ's findings are supported by substantial evidence in the record. The ALJ found that Claimant does not meet or medically equal 112.04 or 112.06. Plaintiff fails to provide any evidence from the record that Claimant satisfies 112.04 based on his depression disorder. Furthermore, the ALJ supported his findings by showing that Claimant is better with medication, likes school, wants to go to college, likes playing on the computer, has friends in school, and gets along with his peers. The ALJ's findings are further supported by evidence in the record showing that Claimant willingly separated from his mother, stopped suffering from psychogenic vomiting, and showed significant progress. This is more than a mere "scintilla" of evidence, and a reasonable mind might accept this evidence as adequate to support the ALJ's conclusions. *See Richardson*, 402 U.S. at 401. The ALJ's findings are supported by substantial evidence in the record.

### iii. Attention Deficit Hyperactivity Disorder Listing (112.11)

Plaintiff argues that the ALJ's finding, that Claimant did not meet the listed impairment for ADHD because Claimant showed signs of age appropriate social functioning and did not have "difficulties in maintaining concentration, persistence or pace" under 112.02B (despite suffering from ADHD), is not supported by substantial evidence. Defendant argues that "[t]he evidence of record does not remotely demonstrate a meeting of all of the criteria at 112.11.A, and the additional criteria set forth at Section 112.02.B.2." (Def. Br. At 5.)

The attention deficit hyperactivity disorder listing, 112.11, requires medically documented findings of the following: marked inattention, marked impulsiveness, and marked hyperactivity. 20 C.F.R. Part 404, Subpart. P, App. 1, Section 112.11(A). Additionally, Section B of 112.11 requires that the severity of the impairment meet the criteria in Section

112.02(B)(2), identical to section B of 112.06 described above.[11]  20 C.F.R. Part 404, Subpart. P, App. 1, Section 112.11(B).  The ALJ found that the record does not document any marked inattention, impulsiveness, or hyperactivity.  Plaintiff does not argue and does not provide any evidence in the record that Claimant suffers from marked inattention, marked impulsiveness, or marked hyperactivity.[12]  Because the ALJ's finding that there is no evidence the Claimant suffered from marked inattention, impulsiveness, or hyperactivity, the ALJ's finding that the record does not satisfy Section A of 112.11 is supported by substantial evidence.

### iv.  Obesity Impairment

Next, Plaintiff argues that the ALJ failed to consider how Claimant's obesity would affect his enflamed joints.  In response, Defendant claims that the ALJ considered Claimant's obesity, but found that it did not meet or medically equal the criteria of a listing, pursuant to Social Security Ruling 02-1p.

Social Security Ruling 02-1p notes that there is no listing for obesity, but obesity may increase the severity of coexisting or related impairments to the extent that the combination of the impairments meets or medically equals the criteria of a listing.  The ALJ acknowledged that in addition to Claimant's obesity, he also suffers from juvenile rheumatoid arthritis and recently injured his leg.  The ALJ found that the Claimant has some difficulty getting around; however,

---

[11] As noted above, Section B of 112.06 requires that the severity of the impairment meet at least two of the appropriate age-group criteria in paragraph B2 of 112.02.  20 C.F.R. Part 404, Subpart. P, App. 1, Section 112.06(B).  The appropriate age-group criteria in Paragraph B2 of 112.02 include marked impairments in cognitive/communicative function, social functioning, personal functioning, and maintaining concentration, persistence, or pace.  20 C.F.R. Part 404, Subpart. P, App. 1, Section 112.02(B)(2).

[12] Plaintiff sole argument addresses the additional requirements in Section B of 112.11.  Section B alone is not enough to meet the requirements of 112.11.  In any event, for the reasons stated above for Section B of 112.06, the ALJ's findings on Section B of 112.11 are supported by substantial evidence.

the ALJ found that the Claimant insists on walking to school instead of taking a bus, and that the Claimant is able to run, jump, skip, and dribble a basketball. Additionally, the ALJ found that Claimant has made progress in school, has friends, gets along with his peer, and has a "winning" personality. The ALJ found that, even when obesity is considered in combination with the Claimant's other impairments, he still does not meet or medically equal a listed impairment. In light of the evidence in the record, the Court finds that the ALJ's findings are supported by substantial evidence.

### c. Whether Claimant's Impairments Functionally Equal a Listed Impairment

With respect to functional equivalence to a listed impairment, Plaintiff only provides argument with respect to the ALJ's findings in two domains: (1) "acquiring and using information" and (2) "attending and completing tasks."[13] Plaintiff argues that Claimant suffers a "marked" limitation in both of these domains, and that the ALJ's findings are not supported by substantial evidence in the record. As such, to prevail, Plaintiff must show that the ALJ's findings on both limitations are not supported by substantial evidence.

### i. Domain of Acquiring and Using Information

Plaintiff argues that the evidence in the record supports a finding of a "marked" limitation in the domain of acquiring and using information for three reasons: (1) Plaintiff contends that Claimant is two to three grade levels behind the appropriate levels expected for special education

---

[13] While Plaintiff states that all of the ALJ's findings concerning the six domains of functional equivalence lack support by substantial evidence, she fails to provide any evidence or argument with respect to the four remaining domains. Because the Plaintiff failed to articulate any argument or provide any evidence on these domains, any remaining arguments are waived. *See Bowser v. Barnhart*, 84 F. App'x 241, 243 (3d Cir. 2004) ("We conclude that because Bowser failed to properly raise this argument before the District Court, he waived his right to do so on appeal.").

students; (2) in January 2008 and May 2008, state agency physicians[14] found that Claimant had a marked limitation in the "acquiring and using information" domain; and (3) Plaintiff argues that the Claimant has "an obvious problem in learning new material and expressing idea[s]" and a "serious problem in applying material he has learned." (Pl. Br. at 23.)

Defendant argues that substantial evidence supports the ALJ's conclusion that Claimant has a less than marked limitation in acquiring and using information. In support, Defendant points to the following facts and findings in the record: (1) the ALJ found that Claimant's abilities had improved; (2) IQ tests showed Claimant to have average intelligence in August 2007; (3) an Individualized Education Program ("IEP") from October 2009 indicated that when Claimant was in the sixth grade, he was in a regular, general education program with supplements, and his reading skills were at a 5.0 grade level, his writing was at a 4.5 grade level, and his mathematic skills were at a 5.0 grade level; (5) in November 2010, Dr. Susan Dellert indicated that Claimant was in the seventh grade with reading skills of a 6.0 grade level and mathematics skills of a 6.1 grade level; and (6) an IEP from January 2011 indicated that when the Claimant was in the seventh grade, his reading skills were at a 5.5 grade level, writing skills were at a 4.5 grade level, and his mathematic skills were at a 5.5 grade level; the same report also noted that Claimant was working on increasing his vocabulary by reading novels.

The "acquiring and using information" domain considers how well Claimant acquires or learns information, and how well Claimant uses the information he has learned. School-age children, aged six to twelve, should be able to learn to read, write, do math, and discuss history

---

[14] These physicians work for Disability Determination Services ("DDS"). DDS is a state-level agency that develops medical evidence for use by the SSA.

and science.[15]  20 C.F.R. § 416.926a(g)(2)(iv).  A claimant has a "marked" limitation in a domain when his impairment or combination of impairments "interferes seriously with [his] ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(2).

The Court finds that the ALJ's findings are supported by substantial evidence in the record.  While the state agency physicians found that Claimant had a "marked" limitation in this domain, the ALJ found that Claimant had a less than marked limitation in this domain because of his progress in school.  In his analysis, the ALJ considered that there was evidence in the record indicating that Claimant was below average in reading, writing, and math.  But after weighing the evidence, the ALJ found that Claimant had progressed in school and that there was other evidence in the record to support that Claimant had a less than marked limitation in this domain.  In August of 2007, an IQ test revealed that Claimant was of average intelligence.  Additionally, the ALJ noted that, in October of 2009, when Claimant was in the sixth grade, he was functioning at a 4.5 to 5.0 grade academic level.  In November of 2010, when Claimant was in the seventh grade, his reading was at a 6.0 grade level and his math was at a 6.1 grade level.[16] The ALJ's decision in this domain is supported by ample evidence.

### ii.  Domain of Attending and Completing Tasks

Plaintiff argues that the ALJ's finding of a less than marked limitation in the domain of attending and completing tasks is not supported by evidence in the record for two reasons.  First,

---

[15] Claimant "will need to use these skills in academic situations to demonstrate what you have learned; *e.g.*, by reading about various subjects and producing oral and written projects, solving mathematical problems, taking achievement tests, doing group work, and entering into class discussions."  20 C.F.R. § 416.926a(g)(2)(iv).

[16] Throughout 2009 and 2010, Claimant appears to be about a grade level behind, but it is important to note that these evaluations were completed at the beginning of the school year. Thus, in 2010, Claimant had approximately a sixth grade academic level, but it was only November of his seventh grade year.

Plaintiff argues that two treating physicians, a psychologist and a psychiatrist, diagnosed marked difficulties in maintaining concentration, persistence, and pace. Second, Plaintiff argues that the ALJ overruled the medical opinion of one of Claimant's doctors—Dr. Joseph Rolon.

Defendant argues that the ALJ properly found that Claimant had less than a marked limitation in the domain of attending and completing tasks. In his analysis, the ALJ considered that Claimant suffers from ADHD and noted that Claimant was given additional time to complete tasks and given work in smaller amounts. The ALJ also recognized that in 2008, a teacher stated that Claimant had an obvious problem in refocusing when necessary and a serious problem in working at a reasonable pace and finishing on time. In support of the ALJ's findings, the Defendant points to analysis by two doctors that examined the Claimant, Dr. Manuel Hugo and Dr. Susan Dellert. In 2008, Dr. Hugo indicated that Claimant was only mildly hyperactive. In 2010, Dr. Dellert indicated that Claimant was not fidgety, and was attentive and cooperative. In addition, Dr. Dellert indicated that Claimant was focusing better with medication. In response to Plaintiff's claims about Dr. Rolon, Defendant argues that at the time of Dr. Rolon's evaluation, he was merely a psychological intern. Defendant also argues that Dr. Rolon failed to provide support for his opinion and merely checked off two boxes on a form.

The domain of "attending and completing tasks" considers how well the child focuses and maintains his attention, and how well he begins, carries through and finishes activities, including the pace at which he performs activities and his ease in changing activities. 20 C.F.R. § 416.926a(h). School-age children, aged six to twelve, should be able to focus attention in a variety of situations in order to follow directions, remember and organize his school materials,

and complete classroom and homework assignments.[17]  20 C.F.R. § 416.926a(h)(2)(iv).  A claimant has a "marked" limitation in a domain when his impairment or combination of impairments "interferes seriously with [his] ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(2).

The Court finds that the ALJ's finding for this domain is supported by substantial evidence in the record.  The ALJ found that Claimant had a less than marked limitation in the domain of attending and completing tasks because Dr. Hugo indicated that Claimant was only mildly hyperactive, Dr. Dellert indicated that Claimant was focusing better with medication, and Claimant had been progressing in school.  The ALJ found Dr. Rolon's opinion deserved less weight because it contradicted by other facts in the record, including that Claimant had made progress in school and did not have behavioral issues there.[18]  Because the evidence in the record is such that a reasonable mind could accept it as adequate to support the ALJ's conclusions—*i.e.*, more than a mere scintilla—the ALJ's findings are supported by substantial evidence.  *See Richardson*, 402 U.S. at 401.

## V.    CONCLUSION

For the aforementioned reasons, and after a careful review of the record, the Court finds substantial evidence to support the ALJ's decision to deny Plaintiff Social Security benefits.  Accordingly, this Court will affirm his decision to deny Plaintiff Social Security Benefits.  An appropriate Order will issue.

---

[17] Claimant "should be able to change [his] activities or routines without distracting [himself] or others, and stay on task and in place when appropriate. [Claimant] should be able to sustain [his] attention well enough to participate in group sports, read by [himself], and complete family chores."  20 C.F.R. § 416.926a(h)(2)(iv).

[18] In addition, it appears that Joseph Rolon was only an intern at the time of the evaluation and provided no explanation for his finding.  This further supports the ALJ's findings with respect to this domain.